**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ANTHONY PAPPALARDO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> EXACTECH, INC., WILLIAM PETTY, DAVID W. PETTY, JAMES G. BINCH, WILLIAM B. LOCANDER, RICHARD C. SMITH, FERN S. WATTS, W. ANDREW KRUSEN, JR., OSTEON HOLDINGS, L.P., OSTEON MERGER SUB, INC., and TPG CAPITAL L.P., <br><br> Defendants, | Civil Action No. _____ <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br> **JURY TRIAL DEMAND** |

**CLASS ACTION COMPLAINT**

Plaintiff Anthony Pappalardo ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. Plaintiff brings this class action on behalf of the public stockholders of Exactech, Inc. ("Exactech" or the "Company") against Exactech's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to TPG Capital, L.P. through its affiliate Osteon

1

Holdings, L.P. and its wholly-owned subsidiary Osteon Merger Sub, Inc. (collectively "TPG").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading preliminary proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on December 4, 2017. The Proxy recommends that Exactech shareholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Exactech is acquired by TPG. The Proposed Transaction was first disclosed on October 23, 2017, when Exactech and TPG announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which TPG will acquire all the outstanding shares of common stock of Exactech for $42.00 per share. Exactech and TPG announced on December 4, 2017 that the Merger Agreement had been amended to reflect a new price of $49.25 per share (the "Merger Consideration"). The deal is valued at approximately $737 million and is expected to close in the first quarter of 2018.

3. The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Exactech management, as well as the financial analyses conducted by J.P. Morgan Securities LLC ("J.P. Morgan"), Exactech's financial advisor.

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing a definitive proxy statement ("Definitive Proxy") with the SEC or otherwise causing a Definitive Proxy to be disseminated to Exactech's shareholders, unless and until the material information discussed below is included in the Definitive Proxy or otherwise disseminated to Exactech's shareholders. In the event the Proposed Transaction is consummated without the material

omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Exactech.

6. Defendant Exactech is a corporation organized and existing under the laws of the State of Florida. The Company's principal executive offices are located at 2320 NW 66th Court, Gainesville, Florida 32653. Exactech common stock trades on NASDAQ under the ticker symbol "EXAC." Exactech develops and sells orthopedic implant devices, as well as related surgical instruments and biologic services. The Company's joint replacement systems are its primary source of revenues.

7. Defendant David W. Petty ("D. Petty") has been CEO of the Company since 2014 and has been president of the Company since 2007. Prior to being named CEO, D. Petty served as Executive Vice President of Sales and Marketing, Vice President of Marketing and Vice President of Operations. D. Petty is the son of William Petty.

8. Defendant William Petty ("W. Petty") is the founder of Exactech and has been the Executive Chairman and Chairman of the Board since November 1985. He served as the Company's CEO from 1985 until 2014, and served as president of the Company from 2002 through 2007. W. Petty is the father of D. Petty.

9. Defendant James G. Binch has been Lead Independent Director since January 2016, and has been a director of the Company since 2007.

10. Defendant William B. Locander has been a director of the Company since 2003.

11. Defendant Richard C. Smith has been a director of the Company since 2010.

12. Defendant Fern S. Watts has been a director of the Company since 2012.

13. Defendant W. Andrew Krusen, Jr. has been a director of the Company since 2014.

14. Defendants D. Petty, W. Petty, Binch, Locander, Smith, Watts and Krusen are collectively referred to herein as the "Board."

15. Defendant TPG Capital L.P. is a private equity investment firm with headquarters in Texas and California. TPG Capital L.P. has more than $70 billion under management, with investments and acquisitions spanning industries from industrials to technology to consumer and retail.

16. Defendant Osteon Holdings, L.P. is a limited partnership organized and existing under the laws of the State of Delaware. Osteon Holdings, L.P. is an affiliate of TPG Capital, L.P.

17. Defendant Osteon Merger Sub, Inc. is a Florida corporation and is a wholly owned subsidiary of Osteon Holdings, L.P.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

19. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

20. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an

effect in this District; (ii) Exactech maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Exactech common stock and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

22. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. As of October 18, 2017, Exactech had approximately 14.5 million shares outstanding.

(b) Questions of law and fact are common to the Class, including, inter alia, the following:

(i) Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii) Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to file a Definitive Proxy with the SEC that does not contain the material information referenced

above and the Proposed Transaction is consummated as presently anticipated;

(iv) Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v) whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c) Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d) Plaintiff's claims are typical of those of the other members of the Class.

(e) Plaintiff has no interests that are adverse to the Class.

(f) The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g) Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h) Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FURTHER SUBSTANTIVE ALLEGATIONS

A. Company Background

23. Exactech develops, manufactures and sells joint replacement devices, as well as

related surgical instruments and biologic services. The joint replacement devices assist surgeons repairing or replacing damaged joints, while biologic solutions can repair bone defects and allow new growth. Biologic solutions can also be used with a joint replacement device. From 2012 through 2016, a significant majority of the Company's sales were from products focused on extremities generally and the knee specifically.

24.     The Company was founded in November 1985 by Defendant W. Petty and his wife, Betty Petty. For almost 30 years, W. Petty sat at the helm as CEO and Chairman of the Board. Betty Petty has been Corporate Secretary of Exactech since 1985, and served as Treasurer and a director of the Board from 1985 until 1996. She has been Vice President of Administration since 2010. Their son, D. Petty, joined the Company in 1988, moving through the operations, sales and marketing departments until he became CEO in 2014. As of March 7, 2017, the Petty family held approximately 23.8% of Exactech stock.

**B. Exactech's Officers Stand to Receive Benefits Unavailable to the Class**

25.     The Proxy acknowledges that the Company's executive officers have interests in the merger that may differ from those of the stockholders and may create conflicts of interest.

26.     Stock options and restricted stock that have been awarded to and are held by Exactech's executive officers and directors will vest and be converted into the right to receive either the Merger Consideration or another amount. The treatment of these equity awards, in addition to benefits provided to executive officers through the Company's change of control plan adopted in February 2007, will create a windfall for Exactech's executive officers that is unavailable to the common stockholders. As demonstrated in the following chart, the executive officers of Exactech (which include D. Petty, W. Petty and Betty Petty) in total stand to receive up to $13.2 million, if they are let go without "cause" after the Proposed Transaction closes:

| Name | Severance Pay | Benefit Continuation | Accelerated Vesting Stock Options | Total |
|---|---|---|---|---|
| William Petty, M.D. | $1,395,000 | $98,804 | $2,653,295 | $4,147,099 |
| David W. Petty | $1,288,298 | $35,285 | $1,155,611 | $2,479,194 |
| Joel C. Phillips | $535,684 | $35,285 | $1,080,940 | $1,651,909 |
| Gary J. Miller, Ph.D. | $1,122,365 | $85,965 | $543,308 | $1,751,638 |
| Bruce Thompson | $495,628 | $33,313 | $511,618 | $1,040,559 |
| Betty Petty | $1,044,813 | $81,285 | $296,382 | $1,422,480 |
| Donna Edwards | $381,799 | $26,754 | $333,222 | $741,775 |

27. In addition, the executive officers and directors will receive more than $180 million when the Proposed Transaction closes, based on their beneficial ownership of Exactech stock:

| Name | Position | Aggregate Merger Consideration |
|---|---|---|
| William Petty | Executive Chairman and Chairman of the Board | $160,459,997 |
| David W. Petty | Chief Executive Officer, President and Director | $3,231,884 |
| Joel C. Phillips | Executive Vice President, Chief Financial Officer and Treasurer | $5,695,960 |
| Gary J. Miller | Executive Vice President, Research and Development | $8,931,931 |
| Bruce Thompson | Senior Vice President-Strategic Initiatives | $1,244,991 |
| James G. Binch | Director | $229,013 |
| William B. Locander | Director | $336,870 |
| Richard C. Smith | Director | $1,236,027 |
| Fern S. Watts | Director | $286,783 |
| W. Andrew Krusen, Jr. | Director | $685,954 |
| Total | | $182,339,408 |

28. However, W. Petty will not be receiving the Merger Consideration. Instead, W. Petty, D. Petty and Betty Petty decided to exchange their Exactech shares for equity in the new parent company for Exactech. While all other Exactech stockholders will lose their ownership of the Company, the Petty family will continue to share in the success of Exactech.

29. In addition, the executive officers of Exactech, which includes W. Petty and D.

8

Petty, will continue to hold their positions after the Proposed Transaction closes. According to the Proxy, Osteon Holdings, L.P. has informed Exactech that it intends to retain the executive officers and management. The Proxy does not disclose when Exactech learned of Osteon Holdings, L.P.'s intent.

### C. The Materially Incomplete and Misleading Proxy

30. The Individual Defendants owe the stockholders a duty of candor. They must disclose all material information regarding the Proposed Transaction to Exactech stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

31. On December 4, 2017, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, inter alia, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, Exactech shareholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

*Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

32. The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of J.P. Morgan's fairness opinion, J.P. Morgan reviewed "certain internal financial analyses and forecasts prepared by the management of the Company relating to its business." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Exactech's management provided to the Board and J.P. Morgan.

33. Notably, Defendants failed to provide the base case and upside case financial projections for fiscal years 2017 to 2023 for: (a) revenue by segment, including extremities, knee,

hip, biologics & spine, other and corporate; (b) segment profit for extremities, knee, hip, biologics & spine, other and corporate; (c) sales and marketing; (d) general and administrative; (e) research and development; (f) restructuring and impairment; (g) taxes; (h) capital expenditures; (i) depreciation and amortization; (j) changes in net working capital; and (k) stock-based compensation expense. In addition, the Defendants failed to provide the upside case financial projections for 2017 to 2023 for EBITDA, diluted EPS and free cash flow. This omitted information is necessary for Exactech stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning J.P. Morgan's Financial Analyses*

34. First, with respect to the *Public Trading Multiples,* the Proxy fails to disclose the objective selection criteria for each transaction, as well as the individual multiples for FV/2018E EBITDA for each of the selected public companies. The Proxy also fails to disclose whether J.P. Morgan performed any type of benchmarking analysis for the Company in relation to the selected public companies.

35. Second, with respect to the *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the objective selection criteria for each transaction, as well as the individual multiples for FV/LTM EBITDA for each of the selected transactions. The Proxy also fails to disclose whether J.P. Morgan performed any type of benchmarking analysis for the Company in relation to the selected target companies.

36. Finally, with respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose whether the analysis utilized unlevered free cash flows for 2017 to 2023 or 2018 to 2023, as well as the amount of unlevered free cash flow in the terminal period of the projections to which the selected perpetuity growth rates were applied. The Proxy also fails to disclose the individual

inputs and assumptions utilized by J.P. Morgan to derive the discount rate range of 8.5% to 9.5%, as well as the range of implied terminal EBITDA multiples resulting from the analysis. Finally, the Proxy fails to disclose how J.P. Morgan treated stock-based compensation expense in the analysis.

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

37. The Proxy also fails to disclose material information concerning the sales process. Defendants W. Petty, D. Petty and Betty Petty entered into a rollover agreement with Osteon Holdings, L.P., whereby their shares of Exactech are exchanged for equity in Osteon Holdings, L.P. The Proxy fails to disclose when the option of a rollover agreement was first suggested by TPG, as well as whether Defendants W. Petty and D. Petty discussed the rollover agreement with TPG before October 18, 2017. The Proxy also fails to disclose the dates of discussions that took place between Defendants W. Petty, D. Petty and TPG after Party A's proposal was received, how many discussions took place and the exact nature of those discussions.

38. The Proxy fails to disclose whether any Board meetings occurred between March 2017 and August 2017. The Proxy also fails to disclose whether the Board was informed of Party A's March 2017 expressed interest, and the basis for not informing Defendant Binch of discussions with TPG until July 29, 2017.

39. In addition, the Proxy fails to disclose the merger agreement remedies it was willing to agree to as discussed at the September 13, 2017 Board meeting.

40. Similarly, the Proxy fails to disclose who at the Company contacted J.P. Morgan on September 14, 2017, when the Board had specifically asked Defendant Binch to reach out to J.P. Morgan.

41. The Proxy also fails to disclose the members of management who met with J.P. Morgan in September 2017.

42. In addition, the Proxy fails to disclose the preliminary valuation analysis provided by J.P. Morgan to the Board on September 27, 2017, October 14, 2017 and October 18, 2017.

43. The Proxy fails to disclose whether the Board discussed Party A's interest at the meeting held on October 18, 2017, or any other meeting between March 2017 and the signing of the Merger Agreement.

44. The Proxy also fails to disclose who the Board directed not to discuss post-closing equity or employment and when that direction was made.

45. The Proxy fails to disclose the fees received by J.P. Morgan in its dealings with TPG, noting only that "J.P. Morgan has been paid in the aggregate many multiples of the compensation J.P. Morgan would receive from the Company under the terms of this engagement."

46. Finally, the Proxy fails to disclose when TPG determined to retain Exactech executive officers, as well as when the Board and executive officers were informed of that determination.

47. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Exactech stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

48. In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the

materially incomplete and misleading information discussed above.

49.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

50.     Further, the Proxy indicates that on October 22, 2017 and December 2, 2017, J.P. Morgan reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion dated December 2, 2017 to the effect that the Merger Consideration was fair, from a financial point of view, to Exactech shareholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning J.P. Morgan's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

51.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53. Defendants have filed the Proxy with the SEC with the intention of soliciting Exactech shareholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

54. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Exactech, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

55. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

56. Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Exactech shares and the financial analyses performed by J.P. Morgan in support of its fairness opinion; and (iii) the sales process.

57. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that J.P. Morgan reviewed and

discussed its financial analyses with the Board during various meetings including on September 27, 2017, October 14, 2017, October 18, 2017, October 22, 2017 and December 2, 2017, and further states that the Board relied upon J.P. Morgan's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

58. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

59. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60. The Individual Defendants acted as controlling persons of Exactech within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Exactech and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and

misleading.

61.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

63.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

64.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate

result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representatives and his counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing a Definitive Proxy with the SEC or otherwise disseminating a Definitive Proxy to Exactech shareholders unless and until Defendants agree to include the material information identified above in the Definitive Proxy;

C. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

D. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E. Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 14, 2017

|  | *s/ Cullin O'Brien*<br>Cullin O'Brien<br>Fla. Bar. No. 0597341<br>CULLIN O'BRIEN LAW, P.A.<br>6541 NE 21st Way<br>Ft. Lauderdale, Florida 33308<br>Telephone: (561) 676-6370<br>Fax: (561) 320-0285<br>E-Mail: cullin@cullinobrienlaw.com |
|---|---|

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514